UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CENTRAL MAINE MEDICAL CENTER,<br><br>Plaintiff,<br><br>v.<br><br>SYLVIA BURWELL, Secretary U.S. Department of Health and Human Services,<br><br>Defendant | ) | Civil Action No. 14-CV-00381-NT |

**PLAINTIFF'S MOTION FOR JUDGMENT ON ADMINISTRATIVE RECORD WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Central Maine Medical Center ("Plaintiff" or "CMMC") hereby moves the Court for Judgment on the Administrative Record and for an order reversing the decision of the Defendant Secretary thereby requiring the Secretary to order the re-opening of appeal number CN 14-1712 and accept the issues Plaintiff timely sought to add in their March 12, 2013 Form C.

## INTRODUCTION

This case tests whether the Provider Reimbursement Review Board ("PRRB" or "Board") erred by refusing CMMC's request to add issues to its appeal Number CN 14-1712. The board plainly erred in concluding that CMMC violated a Board rule by failing to include a letter authorizing a third party ("HRS") to file a request to add issues on its behalf. The record will plainly show that no such letter was required under Board rules because the request was signed by CMMC itself, and not by HRS. Accordingly, the Board (and by extension the Secretary) abused its discretion by ignoring plain facts and violating its own rules.

**APPLICABLE FACTS SUPPORTED BY THE ADMINISTRATIVE RECORD**

1. Plaintiff is a provider of medical services to beneficiaries of the federally administered Medicare Program as set forth in 42 U.S.C. § 1395 *et seq.* ("Medicare Act") and have been designated as Provider No. 20-0024. Defendant's Answer dated October 10, 2015 ("Answer") (Doc. 22) ¶ 4.

**Background**

2. The Center for Medicare & Medicaid Services ("CMS") is the sub-agency within DHHS charged with administrating the Medicare program and overseeing the various Medicaid programs. Answer ¶ 6.

3. CMS' payment and financial functions are contracted to organizations known as Medicare Administrative Contractors ("MACs"). Answer ¶ 7.

4. Following each cost reporting period, the MAC determines the payment amounts due to providers under the Medicare statutes, regulations, and interpretive guidelines published by CMS. Answer ¶ 8.

5. This determination is commonly known as a Medicare Notice of Program Reimbursement or "NPR." *See* Administrative Record filed in this action ("A.R.") p. 383.

6. DHHS regulations require providers to file appeals within 180 days of receipt of a final determination of its fiscal intermediary for a given year. 42 C.F.R. § 405.1835(a)(3)(i).

7. The Provider Reimbursement Review Boat ("PRRB" or "Board") is a sub-agency within DHHS that serves as an administrative review for determinations made by CMS or the MAC. Answer ¶ 9.

8. Pursuant to its authority under 42 C.F.R. § 405.1835-1889, The Board has established certain rules governing the procedure for filing and adjudicating appeals. Board Rule 1.1 ("Authority").[1]

9. Under the Board Rules, third parties may represent the interests of Providers in their appeals; such third parties are known as "designated representatives." Board Rule 5.1 *et seq.*

10. The regulations allow providers to add issues to appeals once they are filed and give providers an additional 60 days to do so. Answer ¶ 11; 42 C.F.R. § 405.1835(e).

11. In order to add issues, Board rules require the provider to submit "Model Form C" along with the documents listed on that form. Board Rule 11.1.

12. If a designated representative files a request to add issues on behalf of a provider, Board Rules require the Provider to submit a letter authorizing that representative to act on their behalf. *Id.*

**Procedural History.**

13. CMMC received its NPR for fiscal year 2007 via letter on July 17, 2013 ("2007 NPR"). A.R. 383.

14. On January 10, 2014, two different designated representatives, Verrill Dana and HRS filed an appeal on CMMC's behalf. Answer ¶¶ 13-14; A.R. 329, 377.

15. Both appeals contained a letter designating Verrill Dana and HRS as the designated representatives for each appeal. A.R. 373, 385

[1] The Provider Reimbursement Review Board Rules can be found at https://www.cms.gov/Regulations-and-Guidance/Review-Boards/PRRBReview/PRRB_Instructions.html .

16. The Verrill Dana appeal sought review of the MAC's determination of "Medicare Bad Debts." A. R. 329.

17. The HRS Appeal sought review of the MAC's determination of the "Rural Floor Budget Neutrality Adjustments." A.R. 387.

18. On January 16, 2014, The Board combined the two appeals into PRRB Appeal No. 14-1712 and designated Verrill Dana as CMMC's representative. A.R. 323.

19. On March 12, 2014, CMMC timely sought to add several new issues to the FYE 2007 appeal. Answer ¶ 19; A.R. 59-62.

20. The issues CMMC sought to add were as follows:

a. DSH SSI Percentage errors
b. DSH Medicare Managed Care Part C Days
c. DSH Payment Dual Eligible Days
d. SSI % Provider Specific
e. Additional Medicaid Eligible Days
f. Outlier Fixed Threshold Issues

21. Pursuant to PRRB rules, the request to add issues was submitted on PRRB Model Form C and signed by Phil Morissette, the Provider's Chief Financial Officer. A.R. 59-62.[2]

22. Mr. Morissette is the Provider's designated contact, as evidenced by the NPR dated July 17, 2013. A.R. 383.

23. The submitted Model Form C was not signed by HRS or Verrill Dana. *Id.*

[2] Defendant admits that and Form C was filed but seems to deny that Mr. Morissette was the one who signed the form. Answer ¶ 20. To the extent the authenticity of Mr. Morissette's signature is in issue, Plaintiff directs the Court to other examples of Mr. Morissette's signature at A.R. 373, A.R. 385, and other examples of the signature which appear in the administrative record.

24.     The Model Form C was submitted with a cover letter from HRS. A.R. 69.  The submission also included several PRRB Model Form D's which transfer the newly added issues to Group Appeals for which HRS was the designated representative.

25.     Three of the six added issues were to be immediately transferred to group appeals for which HRS was the designated representative.  A.R. 51; A.R. 57.

26.     On April 10, 2014, the Board denied the request to add issues to the FYE 2007 appeal because CMMC did not include an authorization letter designating HRS as its representative.  A.R. 54.

27.     The failure to submit an authorization letter was the only deficiency cited by the Board in their April 10, 2014 denial.  *Id.* Answer ¶ 24.

28.     The Secretary did not review the denial pursuant to 42 C.F.R. 405.1875.

29.     On April 30, 2014, HRS submitted a letter highlighting the fact that the forms were signed by CMMC, not HRS and requesting that the Board reconsider its decision to deny CMMC's request to add issues.  A.R. 51.

30.     Along with its request for reconsideration, HRS also submitted the required authorization letter signed by the Provider.  A.R. 194.

31.     Upon receipt of the request for reconsideration, the Board issued a second letter denying the request under the same basis.  A.R. 30.

32.     On August 29, 2014 CMMC, through HRS, submitted its position paper in order to preserve their rights should they prevail in this action.  A.R. 1.

33. The position paper showed that had they been allowed to add the six issues, four of those issues would have been transferred to group appeals. *Id.* CMMC withdrew one of the issues and briefed the other two as if they had been allowed to add them. *Id.*

34. The "Medicaid Eligible Days" issue was not briefed and was therefore no longer part of the appeal under the regulations and Board rules. 42 C.F.R. § 405.1853(b); PRRB Rule 25.

35. Because the Board refused to add the six issues, no further issues remained in appeal number 14-1712.

36. The Board responded to CMMC's position paper by letter dated December 17, 2014. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss, Exhibit A (Doc 14-1). The Board reaffirmed for a third time that they have denied CMMC's request to add additional issues to appeal number 14-1712.

## ARGUMENT

### I. BECAUSE THE REQUEST COMPLIED WITH AGENCY RULES, THE SECRETARY'S DENIAL OF THAT REQUEST WAS ARBITRARY AND CAPRICIOUS.

#### a. STANDARD OF REVIEW.

Jurisdiction over this action lies under 42 U.S.C. § 1395oo(f), which provides that the case "shall be tried pursuant to the applicable provisions under" the Administrative Procedure Act ("APA"), which in turn require a reviewing court to set aside the Secretary's decision if it is contrary to the statute, arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law. 5 U.S.C. § 706(2).

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for judgment on the administrative record shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986); *Ruiz v. Department of Homeland Sec.*, 2010 WL 3257641, *2 (D.Conn., Aug. 16, 2010) (Droney, D.J.) Under the APA, the agency's role is to resolve factual issues to reach a decision supported by the administrative record, while "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-770 (9th Cir. 1985) (internal quotation marks omitted). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Sierra Club*, 459 F. Supp. 2d at 90 (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977).

The APA provides that a reviewing court may set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Ruiz, supra* 2010 WL 3257641 at *2. At the same time, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S.

156, 168 (1962)); *see also Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result.") While the agency action under review is "entitled to a presumption of regularity[,] . . . that presumption is not to shield [an] action from a thorough, probing, in-depth review." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Finally, the Secretary's interpretation of her own regulations is not entitled to deference, and should be set aside, if it is inconsistent with the plain meaning of the regulation and other indications of the Secretary's intent when the regulation was adopted. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

**b. The Filed Request Complied with Board Rules**

The Provider received their Notice of Program Reimbursement on July 17, 2013. A.R. 383. The Provider then filed two individual appeal requests on January 13, 2014 (A.R. 378) and January 10, 2014 (A.R. 329), within the 180 day deadline imposed by 42 C.F.R. § 405.1835(a)(3). The Provider then requested to add issues on March 12, 2014 (A.R. 289) well within the additional 60 day deadline imposed by 42 C.F.R. § 405.1835(e)(3).

Board Rule 11.1 allows the provider to add issues to an individual appeal so long as the provider meets two requirements: (1) timely file a request on Model Form C and; (2) include all the required documentation listed on Form C. Neither the Regulations, nor the Board Rules require the request to be filed with a cover letter signed by a specific person or entity.

While the cover letter for the request was signed by Corninna Goron of HRS, the required documents which formed the request itself were signed by Philippe Morissette, The Chief Financial Officer for the Provider. A.R. 290-91.[3]

Board rules require that if a Form C is signed by the designated representative, then the packet must contain a document authorizing that representative. See Board Rule Appendix Model Form C. The rules only allow one designated representative at a time. Board Rule 5.1. The rules do not prohibit a provider from filing documents on their own behalf. In fact, Rule 5.2 holds providers accountable if their designated representative fails to act. The Board's interpretation of Rule 5.1 as prohibiting a Provider to act on their own behalf would leave that Provider helpless under Rule 5.2 in a situation where the designated representative, for one reason or another, could not act.

**c. The Secretary Cannot Articulate A Rational Connection Between the Facts Found and the Choice Made**

The Secretary based her decision to deny the Provider's request on the basis that the Provider failed to submit a form signifying that HRS was the new representative. This decision is based on an incorrect understanding of the facts. The Provider was not looking to replace Verrill Dana with HRS as the authorized representative. The Provider was merely looking to add issues to an appeal that was already being processed by Verrill Dana and to transfer other issues to group appeals that were being processed by HRS.

The Board was apparently under the misperception that a representative from HRS had signed the Form C. This confusion likely stemmed from the fact that the forms at issue were

[3] Mr. Morissette is the Chief Financial Officer ("CFO") and Treasurer for the Provider; however, in several documents, he is sometimes referred to the as the Director of Finance.

submitted under cover letter from HRS.  The Form C at issue was signed by Mr. Morissette who

is the Chief Financial Officer, Treasurer and Medicare designated contact for the Provider itself,

not a third-party representative of the Provider.  As explained below, the Provider had a

legitimate reason for allowing HRS to coordinate the submission; HRS was the representative for

the group appeal to which many of the added issues were to be transferred.

     As it became clear that the Board was confused by the filing, both Verrill Dana and HRS

endeavored to clear up the confusion.  HRS explained via letter dated April 30, 2014 that the

Provider was submitting the request and not HRS.  A.R. 51.  Verrill Dana explained that both the

Provider and Verrill Dana understood that HRS would proceed as the designated representative

for PRRB Appeal No. 14-1712once issue from the Verrill Dana appeal had been transferred to a

group appeal, which has occurred.  A.R. 57.

     Despite the attempts to clear up the confusion, the Board continued to deny the

Provider's request.  A.R. 32-32.  Again, the Board claimed that HRS, and not the Provider was

attempting to add issues to the appeal.  *Id.*  This assumption is not supported anywhere by the

record.

     Nor is the Provider in violation of any regulation or rule established by the Board.  Board

rules require that there be only one designated third-party representative of the provider (Rule.

5.1) but there is no rule prohibiting the provider from also taking action directly with the Board.

In fact, the pre-printed signature line on Form C allows it to be signed by "Provider

Owner/Officer/Director **or** Representative."  Again, Mr. Morissette is an officer of the Provider,

and the Provider's designated contact for the Medicare program.

Because the Board misunderstood the fact that the Provider itself had signed the Form C, they incorrectly applied their own rule the rule which only applied to 3rd party representatives. As a result, the Provider was blocked from adding issues to its already existing appeal. Because the Board's conclusion was clearly erroneous, the Secretary cannot articulate a rational connection between the facts found and the choice made.

The Provider contends that Rule 5.1 was not intended to prohibit a Provider from taking action on its own appeal. Such a reading would prevent a Provider from stepping in when needed to address issues, because a failure of a representative to carry out his or her responsibilities is not considered by the Board to be good cause for failing to meet any deadlines. Board Rule 5.2. Accordingly, the Provider must remain free to act before the Board in the event it becomes necessary to preserve their rights.

**a. To the extent the request did not comply with Board Rules, the denial of the request was an unreasonably extreme measure given the circumstances.**

The Board has the discretion to penalize providers who do not comply with the Board Rules. 42 C.F.R. § 405.1868 (b). The regulations allow the Board to dismiss the appeal with prejudice, issue an order to show cause why the Board should not dismiss the appeal, or take any other remedial action it considers appropriate. *Id.* Courts have found that despite the discretion to do so, an automatic dismissal, regardless of the circumstances, is arbitrary and capricious. *Univ. of Chicago Med. Ctr. v. Sebelius*, 56 F. Supp. 3d 916, 922-23, n. 9 (N.D. Ill. 2014). In Univ. of Chicago Med. Ctr., an appeal was dismissed for the Provider's alleged failure to adhere to a certain deadlines. *Id.* The Court noted how the confusion about the deadline was an excusable error on the part of the Provider. The Court also noted that while the Board may have had the discretion to outright dismiss the case, the Board also had the discretion to take "any other

remedial action it considers appropriate." *Id.* The Court ruled that the Board's automatic dismissal for any breach, regardless of severity and circumstances, was arbitrary and capricious. *Id.*

As was explained by HRS in an April 30, 2014 letter to the Board, most of the issues that the Provider requested added to the appeal were to be immediately transferred out to group appeals. HRS was the designated representative for the group appeals so had the request been granted, HRS would become the designated representative for those issues. Therefore, it only made sense for HRS to coordinate the submission of the requests which were signed by the Provider, not HRS. The only possible error that the Provider made was in sending the requests with a cover letter with HRS', as opposed to Central Maine Medical Center's letterhead. Furthermore, when made aware of the Board's perceived error, HRS and Provider attempted to cure by submitting the missing authorization letter. A.R. 194. If there was an error, such an error surely cannot warrant automatic dismissal with prejudice. As the court said in Univ. of Chicago Med. Ctr, "If that is not arbitrary and capricious, those words have no meaning." *Univ. of Chicago Med. Ctr.*, 56 F. Supp. 3d at 923.

**CONCLUSION**

By failing to account for the fact the CMMC signed the requests, the Board's decision to deny the requests to add issues was arbitrary and capricious. For the foregoing reasons, CMMC requests the Court to vacate the Board's decision to add issues to Appeal Number 17-1712 so that CMMC may be heard on those issues.

Dated at Portland, Maine this 8th day of January, 2016.

/s/ William H. Stiles
William H. Stiles Bar No. 8123
wstiles@verrilldana.com

/s/ Benjamin E. Ford
Benjamin E. Ford Bar No. 4528
bford@verrilldana.com

Verrill Dana, LLP
One Portland Square
Portland, ME  04112
(207) 774-4000

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2016, I electronically filed the foregoing using the CM/ECF system, which will send notifications of such filing(s) to:

Andrew K. Lizotte
Assistant U.S. Attorney
100 Middle Street
East Tower, 6th Floor
Portland, Maine 04101
Andrew.lizotte@usdoj.gov