**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| CENTRAL MAINE MEDICAL CENTER, )<br>        Plaintiff, )<br> )<br>v. )<br> )<br>SYLVIA BURWELL, Secretary, )<br>U.S. Department of Health and )<br>Human Services, )<br>        Defendant. )<br> ) | Case No. 2:14-cv-00381-NT |

**OPPOSITION AND CROSS-MOTION**
**FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Defendant, the Secretary of the U.S. Department of Health and Human Services ("the Secretary," or "HHS"), hereby opposes the motion for judgment ("Motion for Judgment," or "Mot. for J.") filed by Plaintiff Central Maine Medical Center ("CMMC"), and cross-moves for Judgment on the Administrative Record. Defendant submits that the final decision of the Secretary at issue in this matter is supported by substantial evidence, and is not arbitrary and capricious, an abuse of discretion, or contrary to law. Accordingly, pursuant to 5 U.S.C. § 706(2), the Secretary's decision should be affirmed. In support of this motion, Defendant submits the following incorporated memorandum of law.

**INTRODUCTION**

Plaintiff filed this action pursuant to 42 U.S.C. § 1395oo(f), Section 1878(f) of the Social Security Act, asking this Court to reverse a ruling of the Provider Reimbursement Review Board ("PRRB," or "the Board") denying CMMC's request to add new issues to its pending PRRB

appeal.[1] However, the PRRB properly denied the request to add new issues because, contrary to PRRB rules, it was submitted by an unauthorized representative. Thus, the PRRB's decision is supported by substantial evidence, is not arbitrary and capricious, an abuse of discretion, or contrary to law, and must be affirmed. *See* 42 U.S.C. § 1395oo(f)(1) (incorporating the standards of 5 U.S.C. § 706).

## STATEMENT OF FACTS

Defendant cites below the allegations comprising CMMC's Complaint. Defendant here earlier followed the "practice [of] filing of the entire administrative record" of the PRRB's proceedings and actions concerning CMMC in support of the instant motion. *Gilbert v. Sullivan*, 48 F.3d 1211, at 4 n.2 (1st Cir. 1995) (Table) (citing *Torres v. Secretary of HHS*, 845 F.2d 1136, 1137 n.1 (1st Cir. 1988)); *see also* Certified Administrative Record ("A.R."), ECF No. 11, December 12, 2014. Defendant supplemented the administrative record on October 28, 2015, in order to provide the PRRB's December 17, 2014, decision and other materials. *See* Certified Supplemental Administrative Record ("Suppl. A.R."), ECF No. 27, Oct. 28, 2015.

1. Plaintiff is a provider of medical services to beneficiaries of the federally administered Medicare Program and operates an acute care hospital in Maine, identified by provider number of 20-0024[2] assigned by the Centers for Medicare & Medicaid Services ("CMS"). *See* Compl. ¶ 5; A.R. at 329.

2. On July 17, 2013, Plaintiff received a Medicare Administrative Contractor's ("MAC") reimbursement decision for the fiscal year ending June 30, 2007. A.R. 199.

---

[1] Plaintiff did not challenge any other aspects of the decision, and they are now final.
[2] Under the Medicare statute, providers include hospitals, skilled nursing facilities, and home health agencies. 42 U.S.C. § 1395x(u).

2

3. On January 13, 2014, the PRRB received two appeals for Plaintiff, filed by two different representatives, each challenging a different part of the FY 2007 reimbursement decision.   Compl. ¶¶ 13-14.

   a. One appeal was filed by Healthcare Reimbursement Systems ("HRS"), which had an issue-specific representation letter from Plaintiff issued on January 25, 2012, authorizing HRS to challenge the rural floor budget neutrality amendment.  Compl. ¶ 16; A.R. at 312, 323-326, 329, 335, 375, 385, 387.

   b. The other appeal was by Verrill Dana LLP ("Verrill Dana"), which had the more recent letter of representation from Plaintiff, dated January 8, 2014, and its authorization was not issue-specific.  Compl. ¶ 15; A.R. at 312, 323-326, 329, 335, 375, 385, 387.

4. On January 16, 2014, the PRRB acknowledged Plaintiff's appeals and combined the issues into one case, docketed as Appeal No. 14-1712.  A.R. at 323.  The PRRB informed HRS and Verrill Dana by email that two separate appeals of the FY 2007 decision had been filed for Plaintiff, by two different representatives, and that the PRRB considered Verrill Dana to be the authorized representative for Plaintiff.  *Id.* Both HRS and Verrill Dana acknowledged that determination. *Id.* at 319-321.  The PRRB also noted that "[y]ou are responsible for pursuing your appeal *in accordance with the Board's Rules*."  *Id.* at 312-13, 319-23 (emphasis added).

5. PRRB rules state the "representative is the individual with whom the Board maintains contact. If no case representative is designated, the Board will consider the owner or officer who filed the appeal as the case representative. There may be only one case representative per appeal." PRRB Rules 5.1. "The representative is responsible for . .

. meeting the Board's deadlines . . . All actions by the representative are considered to be those of the Provider . . . Failure of a representative to carry out his or her responsibilities is not considered by the Board to be good cause for failing to meet any deadlines." PRRB Rules 5.2. "The letter designating the representative must be on the Provider's letterhead and be signed by an owner or officer of the Provider. The letter must reflect the Provider's fiscal year under appeal." PRRB Rules 5.4.

6. The PRRB Rules allow new issues to be added to an appeal "[s]ubject to the provisions of 42 C.F.R. § 405.1835(c). . . if the Provider: timely files a request to the Board to add issues no later than 60 days after the expiration of the applicable 180 days period for filing the hearing request (see Appendix – Model Form C) AND includes all of supporting documentation listed on Model Form C." PRRB Rules 11.

7. On March 12, 2014, HRS, asserting it was a designated representative, submitted a request to the PRRB to add issues to Appeal No. 14-1712 for Plaintiff. The letter was on HRS letterhead, signed by HRS president Corinna Goron, and specifically stated "Healthcare Reimbursement Services, Inc. ("HRS"), designated representative has enclosed the Model Form C; Request to Add Issue(s)." The letter did not indicate HRS provided a copy of the request to CMMC. Compl. ¶¶ 19-23; A.R. at 69 (listing only NGS and Strategic Government Initiatives as additional recipients).

8. The enclosed Model Form C listed six additional issues for the fiscal year ending June 30, 2007, and three certifications, signed by Phil Morissette, regarding prior appeal of the new issues, appeals by related providers, and that a copy of the request had been sent to NGS. In response to the Form question "Are you the representative on file for this individual appeal?" HRS selected "No." Immediately after this

question, the Form stated: "NOTE: If you are not the representative on file or who established this appeal then you must attach an authorization letter signed by an official of the provider." A.R. at 70.

9. On March 12, 2014, CMMC sent an Appointment of Designated Representative Letter to the PRRB. It was on CMMC letterhead and signed by Phil Morissette, Chief Financial Officer of CMMC. The letter stated Ms. Corinna Goron of HRS was its designated representative for the fiscal years ending June 30, 2008-2009. A.R. at 204.

10. On April 10, 2014, the PRRB denied HRS' request to add new issues because "Board Rule 5.1 indicates 'there may be only one case representative per appeal'" and Verrill Dana, not HRS, was the authorized representative for Plaintiff's Appeal No. 14-1712, for the June 30, 2007, fiscal year. Compl. At ¶ 24; A.R. at 54-55.

11. The PRRB explained that the new letter of representation appointing HRS was for FYE June 30, 2008 and 2009, not FYE June 30, 2007 – which was the year under appeal. The letter concluded with a reminder that the "Provider is responsible for adhering to all previously established deadlines per the Board's Acknowledgement and Critical Due Dates Notice dated January 16, 2014." The PRRB sent a copy of the denial to HRS and Verrill Dana. A.R. at 54-55.

12. On May 2, 2014, HRS requested reconsideration of the PRRB's denial of its request to add new issues to Appeal No. 14-1712. HRS claimed it had "been formally designated as the Representative for the Provider with respect to Fiscal Year End June 30, 2007." It also argued that if the denial was "influenced by a belief that HRS was attempting to add issues without Verrill Dana's or the Provider's knowledge," CMMC had signed the certifications after "it was agreed by all Parties that HRS

5

would take over as the representative of record." Compl. ¶ 25; A.R. at 51-52. It included an April 28, 2014, letter from CMMC appointing HRS as the designated representative for the June 30, 2007, appeal. A.R. at 194.

13. On July 28, 2014, the PRRB denied the HRS reconsideration request and upheld its April 10th action, reiterating that there may be only one designated case representative per appeal. Compl. ¶¶ 26-27; A.R. 30-32.

14. The PRRB stated that Board Rule 11.1 allows a provider to add new issues to an appeal if, *inter alia*, the request has the supporting documentation listed on Model Form C. Compl. ¶¶ 26-27; A.R. 31-32. This supporting documentation includes an "authorization letter" signed by the provider if the entity seeking to add new issues is not the provider's designated case representative in the appeal. *Id.* The PRRB explained that this requirement ensured "1) that the Provider and its designated case representative are fully aware of the issues within the appeal, and 2) that the Board maintains official communication with one designated point of contact in the appeal." Thus, the PRRB upheld its denial because HRS was not the designated representative for the appeal and HRS did not have a signed authorization letter from Plaintiff. Moreover, the Board stated that while "HRS now has an appointment of designated representation letter[3] . . . the time to add issues" had elapsed.[4] *Id.*

15. On August 22, 2014, Plaintiff submitted a signed letter to the PRRB, dated that same day, replacing Verrill Dana with HRS as its new designated representative for the 2007 appeal. A.R. at 9.

---

[3] The April 28, 2014, letter from Plaintiff that designated HRS as its new representative was received on May 2, 1014. A.R. at 194. There is also an April 28, 2014, letter from Verrill Dana that states HRS was supposed to have provided an updated letter of representation from Plaintiff. *See* A.R. 30-32, 51-52, 57.
[4] *See* 42 C.F.R. § 405.1835(c) (addressing time limit to add new issues to a PRRB appeal).

16. On September 2, 2014, HRS submitted to the PRRB Plaintiff's preliminary position paper which addressed the remaining issues in Appeal No. 14-1712.  A.R. at 1.

17. On December 17, 2014, the PRRB issued a final decision in Appeal No. 14-1712. *See* Suppl. A.R. at 1-4. The PRRB noted it had denied HRS' request to add new issues to the appeal because HRS was not the representative of record at that time. *Id.* The PRRB stated that Verrill Dana was the authorized representative from the filing of the appeal until the August 22, 2014, letter from Plaintiff. *Id.* The PRRB noted Plaintiff had abandoned the remaining issue by not briefing it in the preliminary position paper. *Id.* Therefore, the PRRB closed the case because no issues remained in the appeal.  *Id.*

## ARGUMENT

### I. Pertinent Statutes and Regulations

#### A. The Medicare Statute

The Medicare statute (Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq*.) is a federally funded program of health insurance for the aged, the disabled, and persons suffering from end stage renal disease.  Congress has charged the Secretary with the responsibility for administering the Medicare program, and has authorized her to issue regulations and interpretive rules implementing the statute.  *See, e.g.*, 42 U.S.C. §§ 405(a), 1395hh(a), and 1395ii.  The Secretary has delegated these responsibilities to the CMS Administrator.

The Medicare program is composed of four parts:  Part A (Hospital Insurance Benefits), 42 U.S.C. §§ 1395c-1395i-4; Part B (Supplemental Medical Insurance Benefits), 42 U.S.C. §§ 1395j-1395w-4; Part C (Medicare Plus Choice), 42 U.S.C. §§ 1395w-21-1395w-28; and Part D (Prescription Drugs), 42 U.S.C. § 1395hh.  In order to obtain Medicare reimbursement, a Part A health care provider files an annual cost report with its fiscal intermediary, referred to as a

MAC.  42 C.F.R. §§ 413.20(b), 413.24(f); *see MaineGeneral Med. Ctr. v. Shalala*, 205 F.3d 493, 494 (1st Cir. 2000).  The MAC then reviews "the cost report and issues a Notice of Provider Reimbursement (NPR), which indicates the reimbursement to which the provider is entitled."  42 C.F.R. § 405.1803; *MaineGeneral Med. Ctr.*, 205 F.3d at 494.  If a provider disagrees with the MAC's determination, it may file an appeal with the PRRB.  42 U.S.C. § 1395oo; 42 C.F.R. § 405.1835; *MaineGeneral Med. Ctr.*, 205 F.3d at 494.

      B.      **The PRRB**

The PRRB is authorized by statute to "make rules and establish procedures . . . which are necessary or appropriate to carry out the provisions" of the statute for the conduct of its appeals.  42 U.S.C. § 1395oo(e).  The decision of the PRRB becomes the final administrative decision after sixty days unless the Secretary, through the CMS Administrator, elects to review the decision.  42 U.S.C. § 1395oo(f)(1).  A provider may seek judicial review of the final decision of the PRRB or the Administrator in a federal district court.  42 U.S.C. § 1395oo(f)(1).

By regulation and statute, the PRRB may establish rules and procedures, including "Board actions in response to failure to follow Board rules."  42 C.F.R. § 405.1868; *see* 42 U.S.C. § 1395oo(e). The PRRB has the authority to "make rules and establish procedures. . . to carry out the provisions of section 1878 of the Act and of the regulations in this subpart . . . [including the] authority to take appropriate actions in response to the failure of a party to a Board appeal to comply with Board rules and orders or for inappropriate conduct during proceedings in the appeal."  42 C.F.R. § 405.1868(a).  If the provider fails to meet a requirement established by a Board rule or order, the Board may: (1) Dismiss the appeal with prejudice; (2) Issue an order requiring the provider to show cause why the Board should not dismiss the appeal; or (3) Take any other remedial action it considers appropriate.  *Id.* at § 405.1868(b)(1-3).

**II.     Standard of Review**

The Court's review of the Board's decision is limited to whether the decision is arbitrary and capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence. *See* 42 U.S.C. § 1395oo(f)(1) (incorporating the standards of 5 U.S.C. § 706); *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 826 (2013) ("A court lacks authority to undermine the regime established by the Secretary unless her regulation is arbitrary, capricious, or manifestly contrary to the statute.").

The arbitrary and capricious standard is "highly deferential" to agency decision making and "presumes the validity of agency action." *Nat'l Mining Assoc. v. Mine Safety & Health Admin*, 116 F.3d 520, 536 (D.D.C. 1997). Under that standard, a court must determine whether the agency "articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfgrs. Ass'n., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation omitted); *see also River Street Donuts, LLC v. Napolitano*, 558 F.3d 111, 117 (1st Cir. 2009) (explaining that "'[a]n agency's determination is arbitrary and capricious if the agency lacks a rational basis for. . . the determination or if the decision was not based on consideration of the relevant factors'" (citation omitted)). The "scope of review under the . . . standard is narrow[,] and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfgrs.*, 463 U.S. at 43.

"Where Congress [has] entrusted rulemaking and administrative authority to an agency, courts normally accord the agency particular deference in respect to the interpretation of regulations promulgated under that authority." *South Shore Hosp., Inc. v. Thompson*, 308 F.3d 91, 97 (1st Cir. 2002). An agency's interpretation of its own regulation should be overturned only if "plainly erroneous or inconsistent with its language." *Id.* (citing *Thomas Jefferson*, 512 U.S. 504, 512 (1994)); *see also Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson*, 447

9

F.3d 68, 72-73 (1st Cir. 2006). "This broad deference is all the more warranted when . . . the regulation concerns 'a complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" *Thomas Jefferson*, 512 U.S. at 512 (citing *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 697 (1991)). Medicare is a "complex and highly technical regulatory scheme, and courts should be hesitant to second-guess the Secretary in such matters." *South Shore Hosp.*, 308 F.3d at 106; *see Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 826 (2013) (stating the "Secretary brought to bear practical experience in superintending the huge program generally, and the PRRB in particular").

### III.     The Decision of the PRRB should be Upheld

Plaintiff filed this Complaint challenging "the Board's decision to deny Plaintiff's request to add issues to its appeal of the MAC's reimbursement decision for fiscal year ending June 30, 2007." Compl. ¶¶ 1, 12. Plaintiff claims that because "Plaintiff executed the PRRB Model Form C, as opposed to HRS, Plaintiff did not need an authorization letter designating a new representative."[5] Compl. ¶ 22, *see* Compl. ¶¶ 12, 19. Plaintiff alleges "the request also contained all of the supporting documents listed on PRRB Model Form C."[6] Compl. ¶ 21. Thus, it asks this Court to "vacate the Board's Decision, [and] remand the appeal to the Board with directions that Plaintiff be allowed to add the New Issues to the FYE 2007 appeal." Compl.  However, the final decision of the Secretary at issue in this matter is supported by substantial evidence, and is not arbitrary and capricious, an abuse of discretion, or contrary to law.

The PRRB requires a provider to designate only one authorized representative for its appeal, with the owner or officer who filed the appeal as the default option. PRRB Rules 5.1.

---

[5]     This argument was not raised to the PRRB. Moreover, the certified record shows that HRS filed the request.
[6]     As discussed below, this statement is incorrect.

10

Both Verrill Dana and HRS, however, filed an appeal on behalf of CMMC for FY 2007. A.R. at 323. The PRRB determined that Verrill Dana would be the authorized representative for the appeal, a decision that HRS and Verrill Dana accepted and acknowledged. *Id.* at 319-321. Therefore, Verrill Dana was responsible for "meeting the Board's deadlines" and pursuing the appeal "in accordance with the Board's Rules." *See* PRRB Rules 5.1; A.R. at 312-13, 319-23.

To help reduce its backlog of cases, the PRRB has provided a set of model forms, including Model Form C for adding new issues to an appeal. *See* PRRB Rules 1.2 ("To assure your appeal filing is complete and to assist the Board with a very large case load, please use the model forms"); 73 Fed. Reg. 30190-01, 30192 (2008) (noting "a huge backlog of cases before the Board . . . approximately 6,800 cases"). To further reduce the backlog, CMS restricted the ability of a Provider to add new issues. *See* 73 Fed. Reg. 30190-01, 30192, 30203 (2008) ("the availability of such an extended period for adding issues had become a major obstacle to the Board's efforts to reduce its backlog"). Thus, a request to add new issues must be filed on Model Form C, and include all supporting documentation listed on that form. PRRB Rules 11. To do otherwise ignores the original intent underlying the PRRB Rules themselves.

Yet that is exactly what CMMC did here. It ignored the PRRB's decision that Verrill Dana was the only authorized representative when HRS attempted to add new issues to the appeal. In its March 12, 2014, submission to the PRRB, HRS then erroneously claimed it was the "designated representative" and provided a Model Form C to add new issues. A.R. at 69. However, when the Form specifically asked if the submitter was "the representative on file for this individual appeal" HRS selected "No." Immediately after this question, the Form stated: "NOTE: If you are not the representative on file or who established this appeal then you must

attach an authorization letter signed by an official of the provider." A.R. at 70. Despite the clear requirement of Model Form C, HRS failed to provide the required "authorization letter." *See id.*

On April 10, 2014, the PRRB appropriately denied HRS' attempt to add new issues to the appeal because Verrill Dana was the only authorized representative for the FY 2007 appeal. HRS's action was therefore a black-letter violation of PRRB Rules 5 and 11. A.R. at 54-55. Thus, the denial of the request to add new issues was not "contrary to law" because the PRRB has the authority to take "remedial action it considers appropriate" for the failure to follow Board rules. 42 C.F.R. § 405.1868(b)(3); *see* 42 U.S.C. § 1395oo(e). Substantial evidence further supported the PRRB decision that HRS violated PRRB Rules 5 and 11 because HRS even acknowledged it was not the representative in the appeal, then explicitly claimed it was the representative in the March filing to add new issues, but admitted on the included Model Form C that it was not the representative on file, and then failed to provide the required authorization letter.

The PRRB was not "confused" by the filing and did not "mistakenly" believe that HRS had signed the certifications contained in Model Form C. *See* Mot. for J. at 9-10.[7] The PRRB decision clearly indicated the basis for its decision: "HRS was not authorized to add issues to the FYE 2007 appeal when it **filed** the requests to add and transfer issues on March 13, 2014, as HRS did not provide an authorization letter. . ." A.R. at 32 (emphasis added). The PRRB correctly determined that HRS was not the designated representative and, thus, lacked the authority to make submissions to the PRRB. HRS' actions contravened the PRRB's well-settled rules as well as common sense.

---

[7] Before the PRRB, Verrill Dana and HRS had no difficulty following the reasoning of the PRRB decision: "The basis for the denial appears to be that HRS was not the representative of record for the individual appeal." A.R. at 51 (HRS request for reconsideration); *see also* A.R. at 57 (letter from Verrill Dana stating same basis). It is unclear why Verrill Dana now believes otherwise.

12

Plaintiff mistakenly claims "Board rules require that if a Form C is signed by the designated representative, then the packet must contain a document authorizing that representative." Mot. for J. at 9. However, Model Form C requires documentation—*i.e.*, authorization from the Provider—only if the entity submitting the form is "not the representative on file." *See* A.R. at 70. The signatures of Mr. Morissette on other certifications contained in Model Form C are not a substitute for the explicit requirement that HRS submit an authorization letter. *See* Mot. for J.at 8-10; A.R. at 70. Thus, the request to add new issues failed to include all required documentation listed on Model Form C. *See* PRRB Rule 11.1. In fact, in a letter to the PRRB, Verrill Dana discussed this requirement: "Verrill Dana understood that HRS would provide an updated letter of representation from the Provider at that time [when HRS "filed forms adding additional issues to the appeal"], so that HRS would replace Verrill Dana as the representative in the Board's records." A.R. at 57.

Moreover, the decision of the PRRB was not an abuse of discretion and did not constitute "automatic dismissal with prejudice." *See* Mot. for J. at 12. Verrill Dana, the authorized representative, could have filed the Model Form C to add new issues to the appeal. Additionally, contrary to Plaintiff's claim, a provider is not "helpless" if its designated representative fails to act. *See* Mot. for J.at 9, 11. CMMC could have provided the necessary authorization to allow HRS to act as its representative in the appeal. Indeed, it eventually did so in May 2014 and August 2014.[8] *See* A.R. at 9, 194.

Instead of either of those approaches, HRS requested reconsideration, specifically claiming it had "been formally designated as the Representative for the Provider with respect to

---

[8]   CMMC could also name an owner or officer of CMMC as the designated representative, which is the default option under the rules, and proceed that way. PRRB Rule 5.1. Thus, a Provider always has the ability to "step in" if a designated representative fails to carry out its responsibilities. *See* Mot. for J. at 11.

Fiscal Year End June 30, 2007."[9] A.R. at 51-52. However, HRS failed to provide any documentation supporting its claim, simply stating it had submitted the Model Form C after "it was agreed by all Parties that HRS would take over as the representative of record."[10] *Id.* Thus, the PRRB correctly denied the reconsideration request. Requiring authorization as set out in Model Form C, or submission of issues by an authorized representative, was not arbitrary and capricious because the requirement ensures "the Provider and its designated case representative are fully aware of the issues within the appeal, and . . . the Board maintains official communication with **one** designated point of contact in the appeal." A.R. 31-32 (emphasis added); *see* PRRB Rules 5.1, 6.4 (requiring authorized representative sign an individual appeal as part of the initial filing).

After HRS failed to comply with PRRB Rules 5.1 and 11.1, the Board appropriately took "other remedial action" and refused to admit the new issues. *See* A.R. at 1, 30-32, 54-55; 42 C.F.R. § 405.1868(b)(3). Verrill Dana, HRS, and CMMC should have been aware of the PRRB rules and the requirements to add new issues. In fact, Model Form C specifically included the requirement to provide authorization. Their failure to follow clearly established rules is not a reason to reverse the decision of the Secretary. "[T]he statutory scheme . . . is not designed to be unusually protective of claimants. . . [the] Medicare payment system in question applies to 'sophisticated' institutional providers assisted by legal counsel . . . As repeat players who elect to participate in the Medicare system, providers can hardly claim lack of notice of the Secretary's regulations." *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 828 (2013).

---

[9] Plaintiff's brief directly contradicts this claim and states: "The Provider was not looking to replace Verrill Dana with HRS as the authorized representative." Mot. for J. at 9. The discrepancy between HRS' statements to the PRRB and Plaintiff's statements to this Court further support the decision of the PRRB to only accept submissions by the designated representative.

[10] The May 2 and August 22, 2014 letters from CMMC appointing HRS as its authorized representative occurred after the March 2014 attempt by HRS to add issues to the appeal. A.R. at 9, 69, 194.

## CONCLUSION

For the reasons discussed above, the Secretary opposes Plaintiff's Motion for Judgment and respectfully requests that the Secretary's Motion for Judgment on the Administrative Record be granted.

Dated: February 5, 2016
       Portland, Maine

Respectfully submitted,

THOMAS E. DELAHANTY II
United States Attorney

/s/ Andrew K. Lizotte
Assistant U.S. Attorney
United States Attorney's Office
100 Middle Street
East Tower, 6th Floor
Portland, Maine 04101
(207) 771-3246
Andrew.Lizotte@usdoj.gov

Of Counsel:
WILLIAM B. SCHULTZ
General Counsel

NANCY S. NEMON
Chief Counsel, Region I

ROBERT BERLET
Assistant Regional Counsel
Department of Health and Human Services
J.F.K. Bldg., Rm. 2250
Boston, MA  02203
(617) 565-2377

## **CERTIFICATE OF SERVICE**

  I hereby certify that on February 5, 2016, I electronically filed the foregoing using the CM/ECF system, which will send notifications of such filing(s) to the following:

  William H. Stiles
  Verrill Dana LLP
  One Portland Square
  P.O. Box 586
  Portland, ME 04112
  wstiles@verrilldana.com

  Benjamin E. Ford
  Verrill Dana LLP
  One Portland Square
  P.O. Box 586
  Portland, ME 04112
  bford@verrilldana.com

            Thomas E. Delahanty II
            United States Attorney

            /s/ Andrew K. Lizotte
            Assistant U.S. Attorney
            100 Middle Street
            East Tower, 6th Floor
            Portland, Maine 04101
            (207) 771-3246
            Andrew.Lizotte@usdoj.gov