UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CENTRAL MAINE MEDICAL CENTER, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Docket No. 2:14-cv-381-NT<br>) |
| SYLVIA BURWELL, Secretary, U.S. Department of Health and Human Services, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

**ORDER ON CROSS MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Health care provider Central Maine Medical Center ("**CMMC**") brought this action against the Secretary of the U.S. Department of Health and Human Services ("**the Secretary**") challenging the decision of the Provider Reimbursement Review Board ("**PRRB**," or "**the Board**") denying CMMC's request to add new issues to the fiscal year 2007 appeal.  Pl.'s Mot. for J. (ECF No. 28). The Secretary filed an opposition and cross motion for judgment on the Administrative Record. Def.'s Opp'n and Cross Mot. For J. (ECF No. 29). For the reasons discussed below, the Secretary's Motion for Judgment on the Administrative Record is **GRANTED** and the Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**.

## APPLICABLE STATUTES AND REGULATIONS

The Medicare program is a federally funded system of health insurance for the aged and disabled.[1] See 42 U.S.C. §§ 1395 *et seq*. The Secretary is responsibile for administering the Medicare program and is authorized to issue regulations and interpretive rules implementing the statute. *See, e.g.*, 42 U.S.C. §§ 405(a), 1395hh(a), and 1395ii. The Secretary has delegated these responsibilities to the Centers for Medicare & Medicaid Services ("**CMS**").[2] In order to obtain Medicare reimbursement, a Part A health care provider like CMMC files an annual cost report with its fiscal intermediary, referred to as the Medicare Administrative Contractor ("**MAC**"). *See MaineGeneral Med. Ctr. v. Shalala*, 205 F.3d 493, 496 (1st Cir. 2000); *see also* 42 C.F.R. § 413.24(f). The MAC then reviews "the cost report and issues a Notice of Provider Reimbursement (NPR), which indicates the reimbursement to which the provider is entitled." *MaineGeneral Med. Ctr.*, 205 F.3d at 494; *see also* 42 C.F.R. § 405.1803. When a provider disagrees with the MAC's determination, it files an appeal with the PRRB. 42 U.S.C. § 1395oo; 42 C.F.R. § 405.1835; *MaineGeneral Med. Ctr.*, 205 F.3d at 494.

The Medicare statute authorizes the PRRB to "make rules and establish procedures . . . which are necessary or appropriate to carry out the provisions" of the

---

[1] The Medicare program is composed of four parts: Part A (Hospital Insurance Benefits), 42 U.S.C. §§ 1395c-1395i-4; Part B (Supplemental Medical Insurance Benefits), 42 U.S.C. §§ 1395j-1395w-4; Part C (Medicare Plus Choice), 42 U.S.C. §§ 1395w-21-1395w-28; and Part D (Prescription Drugs), 42 U.S.C. § 1395w-101-1395w-158.

[2] The Center for Medicare and Medicaid Services ("**CMS**"), a sub-agency within the Department of Health and Human Services charged with administering the Medicare program and overseeing the various Medicaid programs, contracts payment and financial functions to organizations known as Medicare Administrative Contractor ("**MAC**"). Compl. ¶¶ 6-7 (ECF No. 1).

statute for the conduct of its appeals. 42 U.S.C. § 1395oo(e); 42 C.F.R. § 405.1868(a) (PRRB has the authority to "make rules and establish procedures. . . to carry out the provisions of [42 U.S.C. § 1395oo] and of the regulations in this subpart"). The Code of Federal Regulations specifically authorizes the PRRB to make rules regarding its "actions in response to the failure of a party to a Board appeal to comply with Board rules." 42 C.F.R. § 405.1868(a). If the provider fails to meet a requirement established by a Board rule or order, the Board is empowered to: (1) [d]ismiss the appeal with prejudice; (2) [i]ssue an order requiring the provider to show cause why the Board should not dismiss the appeal; or (3) [t]ake any other remedial action it considers appropriate. 42 C.F.R. § 405.1868(b)(1-3).

The decision of the PRRB becomes the final administrative decision after sixty days unless the Secretary, through the CMS Administrator, elects to review the decision. 42 U.S.C. § 1395oo(f)(1). Providers may seek judicial review of the final decision of the PRRB in a federal district court. 42 U.S.C. § 1395oo(f)(1).

## FACTS

The following facts are taken from the Administrative Record and CMMC's Complaint and are not disputed by the Secretary.

CMMC is a provider of medical services to beneficiaries of the federally administered Medicare Program and operates an acute care hospital in Maine. Compl. ¶¶ 2, 5. On July 17, 2013, CMMC received the MAC's reimbursement decision for the fiscal year ending June 30, 2007 ("**FY 2007**"). A.R. 383. On January 13, 2014, the PRRB received two appeals for CMMC, filed by two different representatives,

3

each challenging a different part of the FY 2007 reimbursement decision. Compl. ¶¶ 13-14.  One appeal was filed by Healthcare Reimbursement Systems ("**HRS**"), which had an issue-specific representation letter from CMMC dated January 25, 2012, authorizing HRS to challenge the "Rural Floor Budget Neutrality Adjustments." A.R. 321, 323-326, 385, 387.  The other appeal, filed by Verrill Dana LLP ("**Verrill Dana**"), which had a general letter of representation from CMMC dated January 8, 2014, sought review of the MAC's determination of "Medicare Bad Debts."  Supp. A.R. 1.

On January 16, 2014, the PRRB acknowledged CMMC's two appeals and combined the issues into one case, docketed as Appeal No. 14-1712.  A.R. 323.  The PRRB informed HRS and Verrill Dana by email that two separate appeals of the FY 2007 decision had been filed for CMMC by two different representatives and that the PRRB considered Verrill Dana to be the authorized representative for CMMC. A.R. 323.  Both HRS and Verrill Dana acknowledged receipt of that determination. A.R. 319-321.  The PRRB also observed that "[y]ou are responsible for pursuing your appeal in accordance with the Board's Rules." A.R. 313.

In a letter to the PRRB dated March 12, 2014, HRS asserted that it was the designated representative and submitted a request to add issues to Appeal No. 14-1712.  A.R. 69. The letter enclosed two Model Form Cs; each Model Form C listed three additional issues for the FYE June 30, 2007.[3] A.R. 59, 61. On the second page of each of the Model Form Cs, is a "Certification" page requiring three certifications.

---

[3]    The six additional issues sought to be added were: (1) DSH SSI Percentage errors; (2) DSH Medicare Managed Care Part C Days; (3) DSH Payment Dual Eligible Days; (4) SSI % Provider Specific; (5) Additional Medicaid Eligible Days; and (6) Outlier Fixed Threshold Issues. A.R. 59, 61.

4

The certifications were all signed by Phil Morissette, CMMC's Chief Financial Officer.[4] A.R. 60, 62. The Model Form C in a section entitled "Representative Information" asks: "Are you the representative on file for this individual appeal?" The response "No" is selected on both forms. A.R. 59, 61.  Directly below the representation question, the Form states: "**NOTE**: If you are not the representative on file or who established this appeal, then you must attach an authorization letter signed by an official of the provider." A.R. 59, 61. No authorization letter was attached.

On the same day, March 12, 2014, CMMC sent a letter to the PRRB with the reference line stating "Appointment of Designated Representative" and "FYE June 30, 2008-2009." A.R. 204. The letter stated Ms. Corinna Goron of HRS was its designated representative for the fiscal years ending June 30, 2008-2009 for both individual and group appeals. A.R. 204. The letter was on CMMC letterhead and signed by Morissette, but did not reference any case or appeal number. A.R. 204.

On April 10, 2014, the PRRB denied HRS's request to add new issues because "Board Rule 5.1 indicates 'there may be only one case representative per appeal'" and Verrill Dana, not HRS, was the authorized representative for CMMC's Appeal No. 14-1712, for the June 30, 2007, fiscal year. A.R. 54-55. The PRRB explained that the new letter of representation appointing HRS was for FYE June 30, 2008 and 2009,

---

[4] The required certifications were that: 1)"none of the issues added to this appeal are pending in any other appeal for the same period and provider, nor have been adjudicated, withdrawn, or dismissed from any other PRRB appeal"; 2) "there are no other providers to which this provider is related by common ownership or control that have a pending for a Board hearing on any of the same issues for a cost reporting period that ends in the same calendar year covered in this request"; and 3) a copy of the request had been sent to the MAC. A.R. 60, 62.

5

not FYE June 30, 2007—which was the year under appeal. A.R. 54. The letter concluded with a reminder that the "Provider is responsible for adhering to all previously established deadlines per the Board's Acknowledgement and Critical Due Dates Notice dated January 16, 2014." A.R. 55. The PRRB sent a copy of the denial to HRS and Verrill Dana. A.R. 54.

On April 30, 2014, HRS requested reconsideration of the PRRB's denial of its request to add new issues in Appeal No. 14-1712. A.R. 51. HRS asserted that it had "been formally designated as the Representative for the Provider with respect to Fiscal Year End June 30, 2007." A.R. 51. It also argued that if the denial was "influenced by a belief that HRS was attempting to add issues without Verrill Dana's or the Provider's knowledge," CMMC had signed the certifications after "it was agreed by all Parties that HRS would take over as the representative of record." A.R. 51. The request for reconsideration included a letter dated April 28, 2014, from CMMC appointing HRS as the designated representative for the FY 2007 appeal and included the case numbers. A.R. 194.

On July 28, 2014, the PRRB denied HRS's request for reconsideration and upheld its April 10, 2014 decision, restating that there may be only one designated case representative per appeal. A.R. 30-32. The PRRB explained that Board Rule 11.1 allows a provider to add new issues to an appeal if the request is timely made and the request has the necessary supporting documentation listed on Model Form C.[5] A.R. 31-32. If an entity is not the provider's designated case representative, this

---

[5] PRRB Rule 11.1 provides that "an issue may be added to an individual appeal if the Provider: timely files a request to the Board to add issues no later than 60 days after the expiration of the

supporting documentation must include an "authorization letter" signed by the provider. A.R. 32. The PRRB made clear that this requirement ensured: "1) that the Provider and its designated case representative are fully aware of the issues within the appeal, and 2) that the Board maintains official communication with one designated point of contact in the appeal[.]" A.R. 32. Thus, the PRRB upheld its denial because HRS was not the designated representative for the appeal and did not have a signed authorization letter from CMMC. Moreover, the Board stated that while "HRS now has an appointment of designated representation letter . . . the time to add issues" had elapsed. A.R. 32.

On September 2, 2014, HRS submitted to the PRRB CMMC's preliminary position paper for FY 2007, which addressed two issues.[6] A.R. 1. On December 17, 2014, the PRRB issued a final decision on the FY 2007 appeal. Supp. A.R. 1-4 (ECF No. 27). The PRRB noted it had denied HRS's request to add new issues to the appeal because HRS was not the representative of record at that time. Supp. A.R. 2. The PRRB stated that Verrill Dana was the authorized representative from the filing of the appeal until the August 22, 2014, letter from CMMC.[7] Supp. A.R. 2-3. The PRRB

---

applicable 180 days period for filing the hearing request (see Appendix – Model Form C), **AND** includes all supporting documentation listed on Model Form C."

[6] CMMC withdrew one of the issues and briefed the two other issues as if they had been allowed to add them. A.R. 1. The position paper indicated that if it been allowed to add the six issues, four of those issues would have been transferred to group appeals. A.R. 1.

[7] On August 22, 2014, CMMC submitted another letter to the PRRB replacing Verrill Dana with HRS as its new designated representative for the FY 2007 appeal. A.R. 9. This letter appears to be duplicative of the April 28, 2014 letter replacing Verrill Dana with HRS for the FY 2007 appeal. A.R. 194. It is unexplained why HRS did not become the designated representative as of April 28, 2014, but it is of no consequence because by April 28, 2014 it was already too late to add issues to the appeal. PRRB Rule 11.1.

7

noted that CMMC had abandoned the remaining issue by not briefing it in the preliminary position paper. Supp. A.R. 3. The PRRB closed the case because no issues remained in the appeal. Supp. A.R. 4.

## DISCUSSION

### I. Standard of Review

My review of the PRRB's decision is limited to whether the decision is arbitrary and capricious, an abuse of discretion, contrary to law or otherwise not in accordance with law. 42 U.S.C. § 1395oo(f)(1) (incorporating the standards of 5 U.S.C. §§ 701-706). The "scope of review under the . . . standard is narrow[,] and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). CMMC bears the burden of proof. Under the arbitrary and capricious standard, a court must determine whether the agency "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (quotation omitted); *see also River Street Donuts, LLC v. Napolitano*, 558 F.3d 111, 117 (1st Cir. 2009)("[A]n agency's determination is arbitrary and capricious if the agency lacks a rational basis for. . . the determination or if the decision was not based on consideration of the relevant factors." (citations and quotation omitted)). "Where Congress has entrusted rulemaking and administrative authority to an agency, courts normally accord the agency particular deference in respect to the interpretation of regulations promulgated under that authority." *S. Shore Hosp., Inc. v. Thompson*, 308 F.3d 91, 97 (1st Cir. 2002). An agency's interpretation of its own regulation should be

8

overturned only if "plainly erroneous or inconsistent with' its language." *Id*. (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)); *see also Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72-73 (1st Cir. 2006). "This broad deference is all the more warranted when . . . the regulation concerns 'a complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" *Thomas Jefferson Univ.*, 512 U.S. at 512 (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 697 (1991)). The First Circuit has observed that "Medicare is a complex and highly technical regulatory scheme, and courts should be hesitant to second-guess the Secretary in such matters." *S. Shore Hosp.*, 308 F.3d at 106.

## II.     CMMC's Request to Add New Issues to the FY 2007 Appeal

CMMC filed this Complaint challenging "the Board's decision to deny Plaintiff's request to add issues to its appeal of the MAC's reimbursement decision for fiscal year ending June 30, 2007." Compl. ¶ 12. CMMC argues that it complied with the PRRB rules, that the Secretary cannot articulate a rational connection between the facts and the decision not to allow new issues to be added, and that even if HRS's filing did not comply with Board rules, refusing to allow issues to be added was an inappropriately extreme response. Pl.'s Mot. For J. 8-12. I will address each argument in turn.

### A.     Failure to Follow Board Rules

CMMC first asserts that its March filing complied with the PRRB rules because Rule 11.1 allows the Provider to add issues and the regulations and Board

Rules do not require a cover letter. Pl.'s Mot. For J. 8-9. This argument erroneously assumes that the request to add issues was made by CMMC because the certifications on the back of Model Form C were signed by Mr. Morissette, a representative of CMMC. Moreover, the argument ignores the fact that the Model Form C was sent to the PRRB under a cover letter on HRS letterhead, wherein HRS erroneously asserted that it was the designated representative on the FY 2007 appeal.

Although it is correct that Rule 11.1 permits the Provider to add issues to an appeal, the rules also require the use of the Model Form C. PRRB Rule 1.2 ("To assure your appeal filing is complete and to assist the Board with a very large case load, please use the model forms . . . ."). In this case the Model Form Cs that were submitted indicated that whoever submitted them (either HRS or CMMC) was not "the representative on file for the individual appeal." A.R. 59, 61. Model Form C specifically directs: "If you are not the representative <u>on file or who established this appeal</u>, then you must attach an authorization letter signed by an official of the provider." A.R. 59, 61.

Despite the clear requirement of Model Form C, HRS failed to provide the required "authorization letter."[8] The signatures of Morissette on the certifications

---

[8] Morissette sent a separate letter on CMMC letterhead on March 12, 2014, informing the PRRB that HRS was its designated representative for FY 2008 and 2009 for both individual and group appeals. A.R. 204. The letter did not reference any case or appeal number and did not address the FY 2007 appeal. A.R. 204.

After the PRRB denied the request to add issues, Verrill Dana sent a letter dated April 28, 2014 to the PRRB that stated: "Verrill Dana understood that HRS would provide an updated letter of representation from the Provider [when HRS filed the forms adding additional issues to the appeal], so that HRS would replace Verrill Dana as the representative in the Board's records." A.R. 57. It is possible that CMMC intended to replace Verrill Dana with HRS for FY 2007 but specified the wrong

contained on the Model Form Cs are not a substitute for the clear requirement that HRS submit an authorization letter. It is undisputed that Verrill Dana was the designated representative for the FY 2007 appeal and that no authorization letter was submitted by CMMC changing that representation within the timeframe permitted under the PRRB rules to add issues to the FY 2007 appeal.

The Secretary's finding that HRS filed the request to add issues to the appeal is supported by facts contained in the administrative record. A.R. 54-55. PRRB Rules state the "representative is the individual with whom the Board maintains contact." PRRB Rule 5.1 "The letter designating the representative must be on the Provider's letterhead and be signed by an owner or officer of the Provider. The letter must reflect the Provider's fiscal year under appeal." PRRB Rule 5.4. "If no case representative is designated, the Board will consider the owner or officer who filed the appeal as the case representative. There may be only one case representative per appeal." PRRB Rule 5.1. "The representative is responsible for . . . meeting the Board's deadlines. . . . All actions by the representative are considered to be those of the Provider . . . Failure of a representative to carry out his or her responsibilities is not considered by the Board to be good cause for failing to meet any deadlines." PRRB Rule 5.2.

Verrill Dana was the designated representative for the FY 2007 appeal. A.R. 323. Thus, before HRS could add issues to the FY 2007 appeal, CMMC had to submit an authorization letter that changed the designated representative for FY 2007

---

appeal years and failed to reference the appeal number. CMMC does not, however, raise that argument here.

appeal. The authorization letter needed to be on CMMC letterhead and signed by CMMC. PRRB Rule 5.4. There is no dispute that no such letter was submitted within the timeframe permitted under the PRRB rules to add issues to the appeal.

The Plaintiff argues that because Morrissette signed the certifications submitted with the Model Form Cs, CMMC was actually the party filing the forms on its own behalf.[9] Pl.'s Reply Br. 3 (ECF No. 31). But that ignores the statement made in the cover letter submitted by HRS claiming to be the "designated representative." A.R. 69. Although it is possible to interpret the Form Cs alone as being filed by CMMC on its own behalf, it would require the Secretary to ignore the content of the cover letter. The Secretary's conclusion that the Form Cs were being filed by HRS is not only reasonable, it is the most natural inference to make. Accordingly, the Secretary's determination that CMMC failed to follow the rules regarding submission of the Form C's was not arbitrary or capricious.

### B. Rational Connection Between Facts and Decision

CMMC argues that the Secretary cannot articulate a rational connection between the facts and the decision not to allow new issues to be added. Pl.'s Mot. for J. at 9-11. Specifically, CMMC asserts that the Board was under the misperception that a representative from HRS signed the Model Form Cs. Pl.'s Mot. for J. at 9. There is no evidence that the PRRB thought that HRS signed the Model Form Cs.

---

[9] CMMC complains that the Secretary's application of the rules would leave a provider "helpless" if its designated representative fails to act. Pl.'s Mot. for J. 9, 11. I disagree. CMMC could have provided the PRRB with a letter clarifying that it was pursuing the appeal on its own behalf or it could have provided the necessary designation to allow HRS to act as its representative in the appeal. Indeed, it eventually provided the HRS designation letter in April 2014 and August 2014.

12

The written decision of the PRRB does not make any statement, or even imply, who the Board thought signed the Model Form Cs. A.R. 54-55. The denial letter simply stated that "Board Rule 5.1 indicates 'there may be only one case representative per appeal' " and Verrill Dana was the representative designated on CMMC's Appeal No. 14-1712, for the FY 2007. A.R. 55. The request to add issues was denied because it was not submitted by the designated representative—Verrill Dana—and was not accompanied by a letter changing the designation to HRS or CMMC.

The Board articulated its reasons for the decision, pointing out that the requirement ensured: "1) that the Provider and its designated case representative are fully aware of the issues within the appeal, and 2) that the Board maintains official communication with one designated point of contact in the appeal[.]" A.R. 32. Although CMMC asserted various justifications for its actions,[10] none of them bear on whether the Board's actions were arbitrary and capricious. The facts remain that the PRRB has a formal process for adding issues to appeals, that process is controlled by the PRRB Rules, and it is not arbitrary or capricious for the Board to insist on adherence to the rules to ensure the orderly processing of Medicare reimbursement appeals. Because the Board assessed the facts reasonably, interpreted its rules and

---

[10] CMMC asserts that it was not looking to replace Verrill Dana for FY 2007, but it just wanted "to add issues to an appeal that was already being processed by Verrill Dana and to transfer other issues to group appeals that were being processed by HRS." Pl.'s Mot. for J. 9. CMMC asserts that it was reasonable to have HRS coordinate the submission of the new appeal issues because HRS was the representative for group appeals and it was anticipated that at some point the issues would be transferred to group appeals. Pl.'s Mot. for J. 10-12. This argument ignores the fact that the PRRB has a formal process for adding issues to appeals, that process is controlled by the PRRB Rules, and the uniform enforcement of those Rules is essential to orderly processing Medicare reimbursement appeals.

13

forms fairly, and articulated a rational response to the CMMC for the action it took, it did not act arbitrarily or capriciously.

### C. The Severity of the Response

CMMC protests the dismissal of its request to add issues as being too extreme, arguing essentially that the punishment does not fit the crime. Pl.'s Mot. for J. at 11. CMMC cites *Univ. of Chicago Medical Center. v. Sebelius*, 56 F. Supp. 3d 916 (N.D. Ill. 2014), for support. In *Univ. of Chicago Med. Ctr.* the PRRB set out a schedule with deadlines for the final position papers for eight appeals, including FY 1999 through FY 2005 and 2007. *Id.* at 920. The PRRB also sent an email to the parties setting a deadline of January 1, 2013 for the hospital to submit either a preliminary position paper or a joint scheduling order for FY 2005. *Id.* The initial schedule proved unworkable because determining the correct amount of reimbursement depends in part upon numbers drawn from the two prior fiscal years, so the PRRB rescheduled the eight appeals sequentially by fiscal year and issued a new schedule for the parties' final position papers and hearings. *Id.* at 920-21. The new schedule made no mention of the preliminary position paper for FY 2005 (or any other year). *Id.* Thereafter, the Board dismissed the hospital's FY 2005 appeal for its failure to submit either a preliminary position paper or a joint scheduling order by the January 1, 2013 deadline. *Id.*

The hospital appealed the Secretary's dismissal of the FY 2005 appeal. The court reversed the Secretary's dismissal because under the Secretary's proposed interpretation of the schedule, the FY 2005 preliminary paper would have been due before the final position papers for FY 2002, 2003 and 2004, and would have required

14

the hospital to present its position for FY 2005 "even before it had firmed up its arguments as to the correct values for [the] earlier fiscal years." *Id.* at 923. This, the court noted, would "frustrate[e] a major goal of the Scheduling Letter." *Id.* The court found that the PRRB's "revised schedule impliedly repealed the earlier January 1, 2013 [preliminary position paper deadline]" and that the PRRB "acted without granting Hospital adequate notice." *Id.* Under those circumstances the court found the PRRB's dismissal to be arbitrary and capricious. *Id.* at 923-24.

The facts in this case are far different than *Univ. of Chicago Medical Center*. Here, the Secretary made a reasonable assessment of the facts, correctly interpreted and applied the Board Rules, and communicated a satisfactory explanation for its action. While the remedy chosen by the Board was tough, it was not unfair. The PRRB's denial of the request to add new issues was not "contrary to law" because the when a provider fails to meet a requirement established by a Board Rule, the PRRB has the authority both to "dismiss the appeal with prejudice" or to take "remedial action it considers appropriate." 42 C.F.R. § 405.1868(b)(1) & (3); *see* 42 U.S.C. § 1395oo(e). CMMC is an experienced institutional provider. In order to raise additional issues for appeal, CMMC simply needed to follow the PRRB Rules. *See Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 828 (2013) (the Medicare reimbursement statutory scheme "is not designed to be unusually protective of claimants. . . . The Medicare payment system . . . applies to sophisticated institutional providers assisted by legal counsel . . . . As repeat players who elect to participate in

15

the Medicare system, providers can hardly claim lack of notice of the Secretary's regulations." (internal citations and quotations omitted)).

## CONCLUSION

Because I conclude that the final decision of the Secretary at issue in this matter is supported by substantial evidence; is not arbitrary and capricious or an abuse of discretion; and because the Board's action was within its statutory authority, the Secretary's Motion for Judgment on the Administrative Record is **GRANTED** and the Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**. SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 28th day of September, 2016.